IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD HAMILTON,<br>              **Plaintiff,**<br><br>      v.<br><br>FRANK C. VIDEON, INC., doing business<br>as "VIDEON CHRYSLER DODGER<br>JEEP,"<br>              **Defendant.** | CIVIL ACTION<br><br><br><br>NO.  16-4547 |

**DuBois, J.**                                                       **August 12, 2019**

**M E M O R A N D U M**

## I.  INTRODUCTION

In this employment discrimination case, plaintiff, Richard Hamilton, claims that he was terminated by defendant, Frank C. Videon, Inc., on the basis of his age and disability in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*  Presently before the Court is Defendant's Motion for Summary Judgment.  For the reasons that follow, defendant's Motion is granted.

## II.  BACKGROUND

In 1998, plaintiff began working for company Videon Dodge as a service writer.  Def. Statement Material Facts ("Def. SMF") ¶ 7.  Defendant acquired Videon Dodge in 2006 and began doing business as "Videon Chrysler Dodge Jeep."[1]  *See id.* ¶ 8.  Defendant is owned by Steve Videon.  *Id.*

In or about 2008 or 2009, defendant began utilizing a different computer system than it had previously used.  *Id.* ¶ 19.  On more than one occasion, plaintiff had to ask for help in using

---

[1] The caption in the Complaint mistakenly refers to defendant as "Videon Chrysler *Dodger* Jeep," rather than "Videon Chrysler Dodge Jeep."  The Court uses the correct spelling in this Memorandum and Order.

the new computer system, typically from Wayne Bayes, defendant's service manager, or Bob Sundo, who was a service writer. *Id.* ¶¶ 13, 20–21.

In February 2011, plaintiff had a heart attack and underwent a quadruple bypass. *Id.* ¶ 73. He was released to return to work in May 2011. *Id.* ¶ 75. Plaintiff "briefly" went back to the hospital in October 2011 for a coronary stent procedure but was cleared to return to work that same month. *See id.* ¶ 76; Pl. Br. Opp. Def. Mot. Summ. J. ("Pl. Br. Opp.") 10.

In or about June 2012, defendant hired a new sales manager, Mike McVeigh. Def. SMF ¶ 52. According to owner Videon, McVeigh "turned the sales department around" after the recession in the late 2000s, and defendant "started selling more cars and getting busier." *Id.* ¶¶ 47, 53. Videon testified that around August 2012, McVeigh told him that plaintiff and another service writer, Bill Ross, would be unable to handle the increased business. *Id.* ¶ 55.

On or about September 12, 2012, Videon called plaintiff and Ross into his office and told them he was "taking the dealership in a different direction" and that the two of them were terminated. *Id.* ¶ 65; Def. SMF, Ex. A, Pl. Dep. 47:24–25; *see also* Def. SMF, Ex. B, Videon Dep. 47:23–48:1 ("I just said, we're changing direction and I'm going to let you guys go."). At the time of their termination, both plaintiff and Ross were 61 years old and had "heart conditions." *See* Pl. Resp. Def. SMF ¶¶ 15, 105. The third service writer, Sundo, who was 43 years old, remained employed by defendant. *See id.* ¶ 15. A few weeks later, defendant hired a service writer who was in his 30s to replace plaintiff and Ross. *See* Pl. Facts Favorable Light ¶ 16.

Plaintiff filed the Complaint on August 19, 2016, and the Amended Complaint on November 28, 2016, asserting claims of age discrimination under the ADEA and disability discrimination under the ADA. On February 4, 2019, defendant filed the pending Motion for

Summary Judgment (Document Nos. 35–38). Plaintiff responded to the Motion on March 1, 2019 (Document Nos. 40 & 41). On March 12, 2019, defendant filed the Reply (Document No. 43). Defendant's Motion for Summary Judgment is thus ripe for decision.

## III.       LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. However, the existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 322.

## IV.       DISCUSSION

Plaintiff asserts claims of discrimination under the ADEA and ADA. Discrimination claims under both the ADEA and the ADA are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brewer v. Quaker*

*State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995) (ADEA); *Keyes v. Catholic Charities of the Archdiocese of Phila.*, 415 F. App'x 405, 408 (3d Cir. 2011) (ADA). Under this framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas*, *Corp. v. Green*, 411 U.S. 792, 802 (1973). If plaintiff succeeds, the burden shifts to the employer, who must articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Then, the burden shifts back to plaintiff to prove that the employer's proffered reasons are a pretext for discrimination. *Id.* at 804. The "plaintiff at all times bears the 'ultimate burden of persuasion.'" *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Defendant argues plaintiff has not met his burden of proof with respect to both his ADEA and ADA claims. *See* Def. Mem. Mot. Summ. J. 9, 19. For the reasons that follow, the Court agrees with defendant and grants Defendant's Motion for Summary Judgment.

## A. Age Discrimination under the ADEA

Plaintiff asserts that defendant terminated him on the basis of his age: 61 years old. *See* Pl. Br. Opp. 2; Pl. Resp. Def. SMF ¶ 15. The ADEA prohibits age discrimination in employment against any person over age 40. 29 U.S.C. §§ 623(a)(1), 631(a). For the purposes of the motion, defendant assumes the *prima facie* case is met and argues plaintiff has failed to present sufficient evidence to support that defendant's proffered reason for plaintiff's termination was a pretext for age discrimination. *See* Def. Mem. Mot. Summ. J. 9.

To show pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). In other words, plaintiff must show "such weaknesses, implausibilities,

4

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.* at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

Defendant maintains that plaintiff was terminated because he "had difficulties with [defendant's] computer system and was perceived by [defendant's] management (and other employees) as slow and/or not sufficiently responding to customers' needs." Def. Mem. Mot. Summ. J. 9. Plaintiff and Ross, both 61 years old, were terminated shortly after the new sales manager McVeigh told defendant's owner, Videon, that plaintiff and Ross could not handle the anticipated increase in workload. *Id.*; Pl. Resp. Def. SMF ¶ 15. Defendant argues that there is no evidence from which a reasonable jury could (1) disbelieve that this was the reason it terminated plaintiff or (2) believe that an invidious age discriminatory reason was more likely than not a motivating or determinative cause of Plaintiff's termination. Def. Mem. Mot. Summ. J. 9. Plaintiff argues that he has produced evidence from which a reasonable jury could conclude that defendant's articulated reason for his termination was pretext for age discrimination. *See* Pl. Br. Opp. 5–8.

First, plaintiff argues that the fact that defendant terminated him and another 61-year-old employee, retained 43-year-old Sundo, and ultimately hired an individual in his 30s to replace plaintiff is evidence of pretext. *See id.* at 7–8; Pl. Resp. Def. SMF ¶ 15; Pl. Facts Favorable Light ¶ 16. However, the Third Circuit has held that evidence such as replacement with a younger employee, while helpful to establish a *prima facie* case of age discrimination, is insufficient to establish pretext. *See Farzan v. Vanguard Grp., Inc.*, 582 F. App'x 105, 108–09 (3d Cir. 2014) (explaining that, without more, evidence that plaintiff was replaced with a younger employee "does not demonstrate that the defendant's decision to terminate [him] for

poor performance was pretextual") (citing *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007)); *Mercantanti v. WCI Operations LLC*, No. 15-1866, 645 F. App'x 228, 232 (3d Cir. 2016) ("Although the fact that Kohler, who is thirty-two years younger than [plaintiff], took over [plaintiff's] position is sufficient to help establish a prima facie case, it is not sufficient to undermine [defendant's] nondiscriminatory justification.").

Moreover, defendant has proffered evidence in support of its decision to retain Sundo and terminate plaintiff that are not related to age. Videon and Bayes both testified that Sundo was the best of the service writers employed at the time of plaintiff's termination.[2] Def. Mem. Mot. Summ. J. 10; Videon Dep. 51:22–52:15; Def. SMF, Ex. D, Bayes Dep. 37:5–17. According to Videon, Sundo is the best service writer he has ever had. Def. Mem. Mot. Summ. J. 10; Videon Dep. 51:24. Moreover, plaintiff testified that he did not know if his skills as a service writer were superior to those of Sundo. *See* Pl. Dep. 149:1–4. Furthermore, every witness who was deposed, including plaintiff, "testified to some level of performance difficulties on Plaintiff's part." *See* Def. Mem. Mot. Summ. J. 9–10. For example, plaintiff's supervisor, Bayes, testified that plaintiff was "slower than the rest" of the employees because he was talkative and had limited "abilities with computers and technology." Def. SMF, Ex. D, Bayes Dep. 26:3–10. At his deposition, Sundo stated that he had to "help [plaintiff] out with the computer a bit" and that this "slow[ed] down the work process." Def. SMF, Ex. E, Sundo Dep. 44:11–18. Videon testified that he personally observed and heard from other employees that plaintiff "was slow at his work, and I think in his communications, was difficult with customers as well as employees."

---

[2] Plaintiff contends that in *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000), the Supreme Court held that at the summary judgment stage, courts must "disregard all . . . uncontradicted testimony of an interested witness where that testimony supports the moving party." *See* Pl. Br. Opp. 2. The Court disagrees. The Third Circuit expressly rejected this interpretation of *Reeves*, explaining, "The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 272 (3d Cir. 2007).

Videon Dep. 43:3–16. Plaintiff himself admitted that "I always seemed like I would have to ask" for help with defendant's new computer system from Bayes or Sundo. Pl. Dep. 44:23–45:2, 45:10–20.

Next, plaintiff argues that positive testimony by defendant's management contradicts defendant's negative characterization of plaintiff's work performance. *See* Pl. Br. Opp. 7. For example, Bayes testified that plaintiff "seemed, you know, honest, outgoing, and you know, he was good with the customers, some get a little too talkative, but, I mean, you know, he was, you know, friendly." Bayes Dep. 45:7–11. However, broad, positive comments about aspects of plaintiff's performance other than those on which plaintiff's termination was based do not refute defendant's characterization of plaintiff as a slow worker or unable to use the computer system. *See Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992) ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations.").

Plaintiff next contends that defendant provided "shifting reasons" for his termination— when Videon terminated plaintiff, he stated that defendant was going "in a different direction," which plaintiff contends differs from defendant's present articulated reason for his termination. *See* Pl. Br. Opp. 5, 7. Furthermore, according to plaintiff, defendant has no documentation that plaintiff was slow. *Id.* at 5. The Court concludes that Videon's statement that defendant was going in a different direction does not contradict defendant's articulated non-discriminatory reason for termination: that plaintiff was too slow. *See Mercantanti v. WCI Operations LLC*, 645 F. App'x 228, 230–31 (3d Cir. 2016) (concluding employer's initially-provided reason for termination, "restructuring," did not contradict its later averment that plaintiff was fired due to conflicts with management, because it was a minor inconsistency that did not contradict core

facts).  That defendant did not produce any documentation expressly stating that plaintiff was

slow and unable to handle customers' needs does not refute "core facts" of defendant's proffered

reason for plaintiff's termination.  *See Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)

(explaining at the pretext stage, a plaintiff must "present evidence contradicting the core facts put

forward by the employer as the legitimate reason for its decision").

According to plaintiff, defendant also failed to follow its disciplinary policy, which, in

some circumstances, provided for warnings and/or a suspension before termination.  Pl. Br. Opp.

6; Pl. Br. Opp. Ex. 6, at 15–16.  The policy enumerates the unsatisfactory conduct to which

certain penalties apply.  *See* Pl. Br. Opp. Ex. 6, at 15–16.  However, the behavior defendant

describes—slowness and inability to use the computer system, or an inability to handle the

workload—is notably dissimilar to the types of misconduct enumerated in the policy, which

includes, *inter alia*, having an "unsatisfactory" attitude, absenteeism, or theft.  *See* Pl. Br. Opp.

Ex. 6, at 15.  Plaintiff offers no explanation of how this policy relating to misconduct applied to

him.

Plaintiff next argues that defendant's articulated reason for his termination was based on

"subjective criteria," which make it easy for an employer to "mask discrimination."  *See* Pl. Br.

Opp. 6–7.  In support, plaintiff cites a number of cases disparaging employers who proffered a

subjective reason for a plaintiff's termination.  *Id.*  However, plaintiff does not cite, and this

Court is not aware of, any case in the Third Circuit concluding that articulating a subjective

reason for termination is, in itself, evidence of pretext.  The employer's burden is only to

articulate a *non-discriminatory* reason for the adverse employment action, not necessarily an

objective reason.  *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1996)

("The question is not whether the employer made the best, or even a sound, business decision; it

is whether the real reason is [discrimination].”); *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 154 n.9 (3d Cir. 2017) (explaining the Court's role is to assess whether an adverse employment action was discriminatory, not to "sit as a super-personnel department that reexamines an entity's business decision" (internal citation omitted)).  In this case, defendant proffered a non-discriminatory reason for plaintiff's termination that has extensive support in the record—testimony from numerous witnesses, including plaintiff.

Without any additional evidence from plaintiff connecting his age to his termination, the Court concludes that plaintiff has not presented evidence from which a reasonable jury could conclude that defendant's articulated non-discriminatory reason for plaintiff's termination was a pretext for age discrimination.  The Court thus grants defendant's Motion for Summary Judgment with respect to plaintiff's ADEA claim.

### B.  Disability Discrimination under the ADA

Plaintiff asserts that defendant discriminated against him on the basis of his heart disease in violation of the ADA.  *See* Pl. Br. Opp. 10.  Defendant argues that plaintiff has not established a *prima facie* case of disability discrimination.  Def. Mem. Mot. Summ. J. 19.

The ADA prohibits covered employers from discriminating against qualified individuals on the basis of disability.  *See* 42 U.S.C. § 12112(a).  To establish a *prima facie* case of disability discrimination, a "plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).

Defendant argues that plaintiff cannot establish the first prong, that his heart attack or alleged ongoing heart disease constitutes a disability, or the third prong, that his termination was the result of disability discrimination.  Def. Mem. Mot. Summ. J. 19.  Specifically, defendant

maintains that "there is no evidence anywhere in the record connecting [p]laintiff's health to his . . . termination in any manner." *Id.* at 23. In the alternative, defendant argues that even if plaintiff could establish a *prima facie* case of discrimination, he cannot show that defendant's proffered reason for his termination was pretextual. *Id.* at 24.

Plaintiff asserts that he had a disability, heart disease, that began in February 2011 when he suffered a heart attack at work. *See* Pl. Br. Opp. 10. In addition, plaintiff argues that he was employed with defendant for 14.5 years without any documented performance issues and "it was not until after he had a heart attack at work, missed [2.5] months of work and then returned to work after being diagnosed with heart disease" that employees of defendant began to comment that he was slow at his work. *Id.* at 11. According to plaintiff, it is reasonable to conclude from that evidence that Videon and his co-workers "thought he was slow not because he actually was slow but because of their stereotypes and perceptions of how slow [he] had supposedly become since he had the heart attack and was diagnosed with heart disease." *Id.* With respect to evidence of pretext, plaintiff asserts the same arguments he made with respect to the ADEA claim. *See id.* at 12. Plaintiff further argues that the fact that both he and Ross had heart conditions and a non-disabled employee was hired thereafter is sufficient to establish his *prima facie* case. *Id.*

The Court concludes that, even assuming *arguendo* that plaintiff has established a *prima facie* case of disability discrimination, plaintiff has failed to establish that defendant's proffered reason for plaintiff's termination was pretext for disability discrimination.

First, for the same reasons stated *supra*, plaintiff has not produced evidence from which a reasonable jury could "disbelieve" defendant's articulated reason for plaintiff's termination. *See Fuentes*, 32 F.3d at 764. Second, plaintiff has not adduced evidence that "an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *See id.* Plaintiff's argument that the Court should draw an inference of discrimination from his allegation that defendant and his co-workers took no issue with his work until after he suffered a heart attack must fail. Although timing can be evidence of pretext, "there must be some logical connection between the timing . . . and the possibility of the particular discrimination at issue." *See Walton v. Mental Health Ass'n*, 168 F.3d 661, 669 (3d Cir. 1999). Although plaintiff was not terminated until after he developed a heart condition, plaintiff has not presented any other evidence showing a logical connection between this timing and the possibility of age discrimination. Indeed, he fails to assert evidence of, for example, any comment or action by any employee of defendant referencing plaintiff's health. As such, plaintiff has failed to present evidence of pretext. Moreover, plaintiff's own testimony reveals the insufficiency of his evidence. He testified that Videon "didn't need someone around that maybe in another year or whatever was going to be out of work or have another heart attack at the dealership," but when asked if Videon did anything that made him feel this way, he said, "No, . . . that's the way I felt." *See* Pl. Dep. 61:1–11.

In addition, plaintiff's argument that he was replaced with a non-disabled employee, while potentially sufficient at the *prima facie* case stage, is insufficient to establish pretext. *See Francis v. Lehigh Univ.*, No. 10-4300, 2013 WL 787089, at *9 (E.D. Pa. Mar. 1, 2013) ("[T]he fact that a non-disabled employee is now performing Plaintiff's job cannot alone sufficiently support Plaintiff's pretext burden."), *aff'd*, 561 F. App'x 208 (3d Cir. 2014); *see also Mercantanti v. WCI Operations LLC*, No. 15-1866, 645 F. App'x 228, 232 (3d Cir. 2016) (explaining, in ADEA case, that evidence plaintiff was replaced by someone outside the protected class is "sufficient to help establish a prima facie case" but does not establish pretext).

Plaintiff has failed to present evidence that defendant's proffered reason for his termination was a pretext for disability discrimination.  Defendant's Motion for Summary Judgment is thus granted with respect to his ADA claim.

## V.        CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. Judgment is entered in favor of defendant, Frank C. Videon, Inc., doing business as "Videon Chrysler Dodge Jeep," and against plaintiff, Richard Hamilton.  An appropriate Order follows.